FILED
14 FEB 18  PM12: 20
CLERK ... ... ... COURT
NORTHERN DISTRICT OF OHIO

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF OHIO

### EASTERN DIVISION

| | |
|---|---|
| RICHARD A.F. MENDELSOHN<br>32790 Ledge Hill Drive<br>Solon, Ohio 44139<br><br>Plaintiff.<br><br>vs.<br><br>RICHARD BELL<br>33387 Seneca<br>Solon, OH 44139<br>Both as an Assistant Cuyahoga<br>County Prosecutor and Personally<br><br>and<br><br>MICHAEL C. O'MALLEY<br>4481 West 138th Street<br>Cleveland, OH 44135<br>Both as an Assistant Cuyahoga<br>County Prosecutor and Personally<br><br>and | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CASE NO.: 1:13-CV-02572-JG

JUDGE JAMES S. GWIN

Magistrate Judge Nancy Vecchiarelli

<u>SECOND AMENDED COMPLAINT</u>
(WITH DEMAND FOR TRIAL
BY JURY)

1

WILLIAM D. MASON                    )
6806 Dartworth Drive                )
Parma, OH 44134                     )
Both as the Former Cuyahoga         )
County Prosecutor and Personally    )
                                    )
and                                 )
                                    )
BEVERLY DEAN                        )
c/o Cuyahoga County Prosecutor's    )
Office                              )
1640 Ontario – Ninth Floor          )
Cleveland, OH 44113                 )
Both as Director of Human Resources )
for the Cuyahoga County Prosecutor  )
and Personally                      )
                                    )
and                                 )
                                    )
GAYLE WILLIAMS-BYERS                )
1596 Wrenford Road                  )
 South Euclid, OH 44121             )
Both as a former Assistant Cuyahoga )
County Prosecutor and Personally    )
                                    )
and                                 )
                                    )
MARC BULLARD                        )
1321 Chase Avenue                   )
Lakewood, OH 44107                  )
Both as an Assistant Cuyahoga       )
County Prosecutor and Personally    )
                                    )
and                                 )
                                    )
KESTRA SMITH                        )
c/o Cuyahoga County Prosecutor's    )
Office                              )
1 Lakeside Avenue – Room 49         )
Cleveland, OH 44113                 )
Both as an Assistant Cuyahoga       )
County Prosecutor and Personally    )
                                    )
and                                 )
                                    )

**JANICE WALKER**                                     )
**c/o Cuyahoga County Prosecutor's**                 )
**Office**                                           )
**9300 Quincy Ave. – Fourth Floor**                  )
**Cleveland, OH 44106**                              )
**Both as an Assistant Cuyahoga County**             )
**Prosecutor and Personally**                        )
                                                     )
**and**                                              )
                                                     )
**MICHAEL SCALISE**                                  )
**c/o Cuyahoga County Prosecutor's**                 )
**Office**                                           )
**9300 Quincy – Fourth Floor**                       )
**Cleveland, OH 44106**                              )
**Both as an Employee of the Cuyahoga**              )
**County Prosecutor and Personally**                 )
                                                     )
**and**                                              )
                                                     )
**TIMOTHY MCGINTY**                                  )
**1640 Ontario – Ninth Floor**                       )
**Cleveland, OH 44113**                              )
**Both as the Cuyahoga County Prosecutor** )
**and Personally**                                   )
                                                     )
**and**                                              )
                                                     )
**THE COUNTY OF CUYAHOGA**                           )
**c/o Ed Fitzgerald, Executive**                     )
**1219 Ontario Avenue**                              )
**Cleveland, OH 44113**                              )
                                                     )
**and**                                              )
                                                     )
**THE OFFICE OF THE CUYAHOGA**                       )
**COUNTY PROSECUTOR**                                )
**1640 Ontario – Ninth Floor**                       )
**Cleveland, OH 44113**                              )
                                                     )
**and**                                              )
                                                     )
**THE CUYAHOGA COUNTY**                              )
**DEPARTMENT OF HUMAN**                              )
**RESOURCES**                                        )
**1219 Ontario Avenue**                              )

3

Cleveland, OH 44113                       )
                                          )
and                                       )
                                          )
UNNAMED PUBLIC ENTITY NO. 1               )
c/o Ed Fitzgerald, Executive Officer      )
1219 Ontario Avenue                       )
Cleveland, OH 44113                       )

Now comes the Plaintiff, *pro se,* who puts forth the following as the allegations of his Second Amended Complaint:

## THE PARTIES

1.  Plaintiff Richard A.F. Mendelsohn is a resident of Cuyahoga County and has been a registered attorney in the State of Ohio since 1981.

2.  In October, 2006 he became employed as an Assistant Cuyahoga County Prosecutor in the Delinquency Department of the Juvenile Court Branch of the Cuyahoga County Prosecutor's Office.

3.  In 2007 he was transferred downtown where he was an Assistant Cuyahoga County Prosecutor in the General Felony Unit.

4.  He was last employed on April 5, 2013 as an Assistant Cuyahoga County Prosecutor stationed at the Juvenile Justice Center as an Establishment and Support Enforcement attorney.

5.  Plaintiff Mendelsohn is a qualified individual with a disability as used in 42 U.S.C.12112(a) also known as Title I of the Americans with Disabilities Act (ADA) as amended and is an individual protected from discrimination on the basis of such disability in the hiring, advancement, discharge, compensation, training, and other terms, conditions and privileges in his employment.  Further,

Plaintiff is an aggrieved person who is disabled pursuant to O.R.C. Section 4112.01(a)(13) and (23). Plaintiff's disabilities include, but are not necessarily limited to, walking, postural, carrying, performing manual tasks and concentration.

6. Further, Plaintiff is an individual as used in Title V of the ADA and more specifically as used in 42 U.S.C. Section 12203(a) who sought to exercise or enjoy the rights afforded under the ADA and an aggrieved person with a disability pursuant to O.R.C. Chapter 4112 and was therefore entitled to be free from retaliation for opposing any act or practice made unlawful by the Act or because he made a charge or participated in any manner in an investigation to enforce any provision of said ADA or Ohio anti-discrimination statutes.

7. Further, Plaintiff is an individual as used in Title V of the ADA and more specifically as used in 42 U.S.C. Section 12203 (b) and an aggrieved person pursuant to O.R.C. Chapter 4112 who, upon seeking to exercise or enjoy the rights afforded under the ADA or O.R.C. Chapter 4112, was entitled to be free from coercion, intimidation, threat, harassment, or interference in the exercise or enjoyment of any right granted or protected by the ADA or Ohio anti-discrimination statutes.

7(a). Plaintiff filed his Intake Questionnaire with additional pages attached with the E.E.O.C. on January 13, 2014 and was provided Charge of Discrimination under Agency Charge No. 532-2014-00570 on January 13, 2014.

8. Defendant Richard Bell is a resident of Cuyahoga County who was employed by the Cuyahoga County Prosecutor during all times that Plaintiff was employed by the Cuyahoga County Prosecutor's Office.

5

9.     During times pertinent to this Complaint Defendant Bell's actions involving Plaintiff were undertaken while an employee of the Cuyahoga County Prosecutor's Office and also while an employee of Cuyahoga County, Ohio.

10. However, Defendant Bell's actions involving Plaintiff or some part of them were so contrary to the tenets, policies and procedures of the Cuyahoga County Prosecutor's Office as well as the tenets, policies and procedures of Cuyahoga County, Ohio, that they may be found to be outside the scope of his employment thereby invoking personal liability on the part of Richard Bell.

11.  Additionally, Defendant Bell's conduct as it pertains to Plaintiff was sufficiently contrary to valid considerations of the Prosecutors Office and the County of Cuyahoga that they may be found to be outside the scope of his employment thereby invoking personal liability on the part of Richard Bell and/or is beyond being conduct subject to privilege or qualified privilege.

12.  Defendant Michael O'Malley is a resident of Cuyahoga County who was employed by the Cuyahoga County Prosecutor during some of the time that Plaintiff was employed by the Cuyahoga County Prosecutor's Office.

13. During times pertinent to this Complaint Defendant O'Malley's actions involving Plaintiff were undertaken while an employee of the Cuyahoga County Prosecutor's Office and also while an employee of Cuyahoga County, Ohio.

14. For much of his employment with the Cuyahoga County Prosecutor's Office Defendant O'Malley was in a supervisory position over Plaintiff.

15. Much of Defendant O'Malley's interactions with Plaintiff were so

contrary to the tenets, policies and procedures of the Cuyahoga County Prosecutor's Office as well as the tenets, policies and procedures of Cuyahoga County that his actions or some of them may be found to be outside the scope of his employment thereby invoking personal liability on the part of Michael O'Malley.

16.  Additionally, Defendant O'Malley's conduct as it pertains to Plaintiff was sufficiently contrary to valid considerations of the Prosecutors Office and the County of Cuyahoga that they may be found to be outside the scope of his employment thereby invoking personal liability on the part of Michael O'Malley and/or is beyond being conduct subject to privilege or qualified privilege.

17.  Defendant William D. Mason is a resident of Cuyahoga County who was  employed as the Cuyahoga County Prosecutor during much of the time that Plaintiff  was employed by the Cuyahoga County Prosecutor's Office.

18.  During times pertinent to this Complaint Defendant Mason's actions involving Plaintiff were undertaken as an elected official who by reason thereof was also an employee of Cuyahoga County, Ohio.

19.  Defendant Mason's actions involving Plaintiff were so contrary to the tenets, policies and procedures of the Cuyahoga County Prosecutor's Office as well as the tenets, policies and procedures of Cuyahoga County, Ohio,  that his actions or some of them may be found to be outside the scope of the statutory duties of his elected office as defined in O.R.C. Sections 309.08 and 309.09 and/or his employment thereby invoking personal liability on the part of William D. Mason.

20.  Additionally, Defendant Mason's conduct as it pertains to

Plaintiff was sufficiently contrary to valid considerations of the Prosecutors Office and the County of Cuyahoga that they may be found to be outside the scope of his employment thereby invoking personal liability on the part of William D. Mason and/or is beyond being conduct subject to privilege or qualified privilege.

21.  Defendant Beverly Dean is a resident of Cuyahoga County who was employed by the Cuyahoga Prosecutor's Office as the Director of Human Resources during most of the times that Plaintiff was employed by the Office.

22.  During times pertinent to this Complaint Defendant Dean's actions involving Plaintiff were undertaken while an employee of the Cuyahoga Prosecutor's Office and also while an employee of Cuyahoga County.

23. Defendant Dean's actions involving Plaintiff were so contrary to the tenets, policies and procedures of the Cuyahoga Prosecutor's Office as well as the tenets, policies and procedures of Cuyahoga County that her actions or some of them may be found to be outside the scope of her employment thereby invoking personal liability on the part of Beverly Dean.

24.  Additionally, Defendant Dean's conduct as it pertains to Plaintiff was sufficiently contrary to valid considerations of the Prosecutors Office and the County of Cuyahoga that they may be found to be outside the scope of his employment thereby invoking personal liability on the part of Defendant Dean and/or is beyond being conduct subject to privilege or qualified privilege.

25. Defendant Gayle Williams-Byers is a resident of Cuyahoga County who was employed by the Cuyahoga Prosecutor and was in a supervisory role over Plaintiff when he was in the Grand Jury Unit of the Office.

26. During times pertinent to this Complaint Defendant Williams-Beyers's actions involving Plaintiff were undertaken while an employee of the Cuyahoga Prosecutor's Office and also while an employee of Cuyahoga County.

27. Defendant Williams-Byers's actions involving Plaintiff were so contrary to the tenets, policies and procedures of the Cuyahoga Prosecutor's Office as well as the tenets, policies and procedures of Cuyahoga County that her actions or some of them may be outside the scope of her employment thereby invoking personal liability on the part of Gayle Williams-Byers.

28. Additionally, Defendant Williams-Byers's conduct as it pertains to Plaintiff was sufficiently contrary to valid considerations of the Prosecutors Office and the County of Cuyahoga that they may be found to be outside the scope of his employment thereby invoking personal liability on the part of Defendant Williams-Byers and/or is beyond being conduct subject to privilege or qualified privilege.

29. Defendant Marc Bullard is a resident of Cuyahoga County who was employed by the Cuyahoga Prosecutor during all times that Plaintiff was employed by the Cuyahoga Prosecutor's Office.

30. During times pertinent to this Complaint Defendant Bullard's actions involving Plaintiff were undertaken while an employee of the Cuyahoga Prosecutor's Office and also while an employee of Cuyahoga County.

31. Defendant Bullard's actions involving Plaintiff were so contrary to the tenets, policies and procedures of the Cuyahoga Prosecutor's Office as well as the tenets, policies and procedures of Cuyahoga County that his actions or some of

them may be found to be outside the scope of his employment thereby invoking personal liability on the part of Marc Bullard.

32. Additionally, Defendant Bullard's conduct as it pertains to Plaintiff was sufficiently contrary to valid considerations of the Prosecutors Office and the County of Cuyahoga that they may be found to be outside the scope of his employment thereby invoking personal liability on the part of Defendant Bullard and/or is beyond being conduct subject to privilege or qualified privilege.

33. Defendant Kestra Smith is a resident of Cuyahoga County who was employed by the Cuyahoga Prosecutor during all times that Plaintiff was employed by the Cuyahoga Prosecutor's Office and was Plaintiff's supervisor when he was located at the Cuyahoga Domestic Relations Court.

34. During times pertinent to this Complaint Defendant Smith's actions involving Plaintiff were undertaken while an employee of the Cuyahoga Prosecutor's Office and also while an employee of Cuyahoga County, Ohio.

35. Defendant Smith's actions involving Plaintiff were so contrary to the tenets, policies and procedures of the Cuyahoga Prosecutor's Office as well as the tenets, policies and procedures of Cuyahoga County that her actions or some of them may be found to be outside the scope of her employment thereby invoking personal liability on the part of Kestra Smith.

36. Additionally, Defendant Bullard's conduct as it pertains to Plaintiff was sufficiently contrary to valid considerations of the Prosecutors Office and the County of Cuyahoga that they may be found to be outside the scope of his

employment thereby invoking personal liability on the part of Defendant Bullard and/or is beyond being conduct subject to privilege or qualified privilege.

37. Defendant Janice Walker is a resident of Cuyahoga County who was employed by the Cuyahoga Prosecutor's Office during all times that Plaintiff was employed by the Cuyahoga Prosecutor's Office and who was in a supervisory position over Plaintiff when he was located at the Cuyahoga County Juvenile Court.

38. During times pertinent to this Complaint Defendant Walker's actions involving Plaintiff were undertaken while an employee of the Cuyahoga Prosecutor's Office and also while an employee of Cuyahoga County.

39. Defendant Walker's actions involving Plaintiff were so contrary to the tenets, policies and procedures of the Cuyahoga Prosecutor's Office as well as the tenets, policies and procedures of Cuyahoga County that her actions or some of them may be found to be outside the scope of her employment thereby invoking personal liability on the part of Janice Walker.

40. Additionally, Defendant Walker's conduct as it pertains to Plaintiff was sufficiently contrary to valid considerations of the Prosecutors Office and the County of Cuyahoga that they may be found to be outside the scope of his employment thereby invoking personal liability on the part of Defendant Walker and/or is beyond being conduct subject to privilege or qualified privilege.

41. Defendant Michael Scalise is a resident of Cuyahoga County who was employed by the Cuyahoga County Prosecutor during some of the time that Plaintiff was employed by the Cuyahoga County Prosecutor's Office.

42. During times pertinent to this Complaint Defendant Scalise's

actions involving Plaintiff were undertaken while an employee of the Cuyahoga County Prosecutor's Office and also while an employee of Cuyahoga County.

43. Defendant Scalise's actions involving Plaintiff were so contrary to the tenets, policies and procedures of the Cuyahoga Prosecutor's Office as well as the tenets, policies and procedures of Cuyahoga County that his actions or some of them may be found to be outside the scope of his employment thereby invoking personal liability on the part of Michael Scalise.

44. Additionally, Defendant Walker's conduct as it pertains to Plaintiff was sufficiently contrary to valid considerations of the Prosecutors Office and the County of Cuyahoga that they may be found to be outside the scope of his employment thereby invoking personal liability on the part of Defendant Walker and/or is beyond being conduct subject to privilege or qualified privilege.

45. Defendant Timothy McGinty is a resident of Cuyahoga County who was appointed and then elected as the Cuyahoga County Prosecutor and has held that position since the fall of 2012.

46. During times pertinent to this Complaint Defendant McGinty's actions involving Plaintiff were undertaken while he was the Cuyahoga County Prosecutor and also while he was an employee of Cuyahoga County, Ohio.

47. Defendant McGinty's actions involving Plaintiff were so contrary to the tenets, policies and procedures of the Cuyahoga Prosecutor's Office as well as the tenets, policies and procedures of Cuyahoga County that his actions or some of them may be found to be outside the scope of the statutory duties of his elected

office as defined in O.R.C. Sections 309.08 and 309.09 and/or his employment thereby invoking personal liability on the part of Timothy McGinty.

48. Additionally, Defendant McGinty's conduct as it pertains to Plaintiff was sufficiently contrary to valid considerations of the Prosecutors Office and the County of Cuyahoga that they may be found to be outside the scope of his employment thereby invoking personal liability on the part of Defendant McGinty and/or is beyond being conduct subject to privilege or qualified privilege.

49. Defendants (a) The County of Cuyahoga; (b) The Cuyahoga County Prosecutor's Office; and, (c) The Cuyahoga County Department of Human Resources are either political subdivisions of the State of Ohio or a department of such political subdivisions of the State of Ohio and are covered entities under 42 U.S.C. Section 12112(a) and/or persons under 42 U.S.C. 12203(a) and are persons and employers as defined in O.R.C. 4112.01(A)(1) and (2).

50. As such, they are bound by the provisions of the United States Constitution and the Constitution of the State of Ohio as well as U.S. and Ohio anti-discrimination statutes..

51. As such they are subject to the prohibitions contained in the ADA and ORC Chapter 4112.

52. As such they may be found liable for the acts of the named defendants whose acts or parts of them may create respondeat superior and/or vicarious liability for these entities as the employer(s) of the named defendants who might have been acting within the scope of their employment; or if said named-

defendant(s) were acting outside of said employment the employer acknowledged, ratified, acquiesced or participated to or in such improper acts.

53. Unnamed Defendant is either a political subdivision of the State of Ohio or a department of such political subdivisions of the State of Ohio.

54. As such, it is bound by the provisions of the United States Constitution and the Constitution of the State of Ohio.

55. As such it is subject to the prohibitions contained in the ADA and in ORC Chapter 4112.

56. Said unnamed political subdivision or department of said political subdivision had responsibility over the parking facilities at the Juvenile Justice Center including the underground parking facility during the time Plaintiff was stationed at the Juvenile Justice Center. Said unnamed Defendant are most likely either The Cuyahoga County Department of Public Works or the Cuyahoga County Juvenile Court.

## COUNT ONE – INTENTIONAL INTERFERENCE WITH BUSINESS AND/OR EMPLOYMENT RELATIONSHIP BY DEFENDANT RICHARD BELL

57. Plaintiff re-alleges the allegations contained in paragraphs one through eleven and forty-nine through fifty-six as if fully rewritten herein.

58. During the application process, including correspondence and interview stages, Plaintiff consistently and specifically indicated his desire to be employed in the capacity of felony trial counsel because of his experience and strength in such trial work.

59. After approximately six months as trial counsel in

the Delinquency Unit Plaintiff was transferred to a trial counsel's position in the General Felony Unit in or around March, 2007.

60. In that capacity Plaintiff was initially under the supervision of Saleh Awadallah and David Zimmerman who were responsible for completing Plaintiff evaluation dated January, 2008. Contrary to the office's stated policy for yearly evaluations, Plaintiff received no evaluation of his 2008 work.

61. Subsequent to the 2007 evaluation, in the later part of 2008 or the early part of 2009 Plaintiff was under the supervision of Michelle Early and then Gayle Williams-Byers as trial counsel in the General Felony Unit.

62. During the time Plaintiff was trial counsel in the General Felony Unit, Plaintiff was not under the supervision of Defendant Bell.

63. During the time Plaintiff was trial counsel in the General Felony Unit he performed his duties diligently, responsibly and effectively as displayed by his evaluation and trial records/results.

64. County prosecutor's duties are delineated in O.R.C. Section 309.08 and 309.09.

65. During the later part of 2008 and into the spring of 2009 Plaintiff was considering running for Solon City Council and had several conversations regarding this with Defendant Bell who also was Solon's Democratic Ward Leader.

66. Those employed by the Cuyahoga Prosecutor's Office were encouraged to seek election to public office.

67. In early 2009, Defendant Bell came into Plaintiff office and, in front of another assistant prosecuting attorney, advised, warned and threatened Plaintiff to think carefully about running for Solon City Council.

68. Defendant Bell advised Plaintiff to advise then Prosecutor William Mason of his interest in running for Solon Council which Plaintiff. Mr. Mason replied he did not care what Plaintiff did.

69. On a later date as Plaintiff was leaving the office for the evening, Defendant Bell stopped Plaintiff and informed him that Defendant Bell considered Plaintiff's contemplated run for office a slap of Defendant Bell's face.

70. Defendant Bell added he was the reason Plaintiff became employed by the Cuyahoga Prosecutor's Office.

71. Nothing prevented Defendant Bell from having these discussions outside of the office and the normal workday. Having these discussions at the office close to the normal workday was meant to threaten Plaintiff and his employment.

72. The statutory duties of county prosecutors do not include influencing who will or will not seek any given elected position.

73. That subsequent to these discussions between Defendant Bell and Plaintiff, Defendant Bell began to scrutinize Plaintiff's work.

74. During this time there had been no change as to whom Plaintiff was to report.

75. Defendant Bell was not charged with the supervision of Plaintiff.

76. Nonetheless, Defendant Bell began reporting to First Assistant Michael O'Malley about Plaintiff work and performance.

16

77. On April 28, 2009 Plaintiff was requested by e-mail to speak with Michael O'Malley.

78. After hours on April 28, 2009 Plaintiff notified Mr. O'Malley his schedule for the following day and he would see Mr. O'Malley as soon as possible.

79. That on or after April 29, 2009 Plaintiff met with Mr. O'Malley.

80. At this point both Defendant Bell and Mr. O'Malley knew that floor prosecutor's would soon have access to computers on the floors and that each floor would be receiving an additional prosecutor to assist with the work.

81. Plaintiff attempted to assuage Defendant Bell's concerns by showing documents to him. Defendant Bell declined to view said documents.

82. When Plaintiff met with Mr. 'Malley, Plaintiff was informed that he would be removed as trial counsel by the middle of May, 2009.

83. Plaintiff offered to show Mr. O'Malley documents to respond but Mr, O'Malley declined to review such documents.

84. Plaintiff voiced concerns about the change and how it would negatively impact his well-being, but this was of no avail.

85. On or about May 2, 2009 Plaintiff presented a recap of his docket to Defendant Bell to show Defendant Bell that his reports on Plaintiff work were in error. Defendant Bell retained this document.

86. During this meeting, Plaintiff stated: "I enjoy trial work" to which Defendant Bell responded: "I know".

87. Then Plaintiff stated: I'm good at trial work" to which Defendant Bell responded: "I know".

88. Plaintiff issued a memo regarding Plaintiff's concerns with the change of positions and sought certain accommodations in his responsibilities that was delivered to Defendants Mason, O'Malley and Dean.

89. Defendant Bell's actions leading to Plaintiff being removed as trial counsel in the General Felony Unit were not privileged conduct as Defendant Bell was not in the line of supervising personnel for Plaintiff.

90. Defendant Bell's actions leading to Plaintiff being removed as trial counsel in the General Felony Unit were not privileged conduct as Defendant Bell was not acting within the scope of any proper duty of the Prosecutors Office and was directly linked to dissatisfaction with Plaintiff's anticipated run for non-partisan election.

91. Consideration of Plaintiff's seeking election to office was outside the scope of Defendant Bell's scope of duty.

92. After the 2009 election a vacancy in Solon Council from Defendant Bell's ward opened and defendant Bell applied.

93. Plaintiff's opponent in the 2009 election retained his seat on council and was now a member of the Prosecutor's Office having come to the office in early 2009.

94. Plaintiff's opponent was one of a 4-2 majority of Solon Council that voted for Defendant Bell to fill the vacancy.

95. At the time of Defendant Bell's appointment, Defendant Bell was in direct supervisory line to Plaintiff's opponent.

96. That these relationships provided support and benefit to

18

Defendant Bell's pursuit of the appointment to Solon City Council.

97.  The pursuit of this appointment provided the Prosecutor's Office no benefit in the completion of its statutory duties

98.  The exertion of pressure by Defendant Bell upon Plaintiff for his consideration of seeking public office carried with it personal benefit for Defendant Bell.

99.  Additionally, Defendant Bell's conduct was undertaken with the intent and/or purpose of negatively impacting Plaintiff business and/or employment relationship with the Prosecutor's Office and/or the County of Cuyahoga.

100.  Defendant Bell's conduct was directly linked to and resulting from Plaintiff's consideration of running for election as to be intentional, purposeful, improper, unlawful and/or otherwise contrary to public policy that lie outside the purview of the statutory duties of the Cuyahoga Prosecutor's Office.

101.  Defendant Bell's interference with the business and/or employment relationship between Plaintiff and the Cuyahoga Prosecutor's Office and/or Cuyahoga County, was malicious and wanton and was undertaken on the basis of personal resentment of Plaintiff considering running for election and therefore not based upon any valid concern of the Prosecutor's Office or County.

102.  Defendant Bell's conduct was undertaken with the intent and/or purpose of inducing the Cuyahoga Prosecutor's Office and/or Cuyahoga County to either modify or terminate those relationships to Plaintiff's detriment.

103.  Defendant Bell's conduct interfered with Plaintiff s business and/or employment relationships with the Prosecutor's Office and/or the County.

104. That Defendant knew his actions were wrongful or he recklessly disregarded the likelihood of of the wrongfulness of his actions

105. That as a further result of such interfering conduct by Defendant Richard Bell, Plaintiff sustained injury and/or damages including but not limited to: (1) negative impact to business or employment relationship; (2) lost wages; (3) lost advancement opportunities; (4) physical harm or injuries; (5) damages arising from infliction of serious emotional distress; (6) damage to his self-esteem; and, (7) the wrongful termination of his employment.

## COUNT TWO – INTENTIONAL INTERFERENCE WITH BUSINESS AND/OR EMPLOYMENT RELATIONSHIP BY DEFENDANT JANICE WALKER

106. Plaintiff re-alleges the allegations contained in paragraphs one through one hundred five.

107. Plaintiff was under the supervision of Defendant Walker from September, 2011 through April 5, 2013.

108. Throughout this period Plaintiff had advised Defendant Walker that he had previously made requests for accommodations.

109. That between February 28, 2013 and March 5, 2013 there were a series of installations and/or modifications that were made to Plaintiff's work area.

110. That these accommodations required periods for training and further adjustments in order to provide the desired relief.

111. Some of the accommodations also required training in order to achieve the desired benefits.

112.  Plaintiff advised Defendant Walker of the disruptive nature these changes had to his work-day activities and also advised that the processes and procedures for instituting accommodations identified in the employment manuals of Cuyahoga County and the Cuyahoga Prosecutor's Office had not been followed and resulted in detrimental interference with his work responsibilities.

113.  Around this same time Defendant Walker advised Plaintiff that he would receive clerical assistance with his work to assist in his getting caught up.

114.  Plaintiff took the time to display to Defendant Walker work that was ready for the support staff personnel to complete.

115.  Arrangements were made for the support staff to work on March 6, 2013.  Subsequently the support staff assigned requested to put off the work until March 7, 2013 and March 8, 2013.  This was scheduled for after the normal work day.

116.  On March 6, 2013 the support staff personnel requested starting on this arrangement after work on Monday March 11, 2013.

117.  On March 11, 2013 Defendant Walker notified the staff that the support staff personnel was absent from work.

118.  On March 12, 2013 the support staff appeared before normal work hours and said that she was instructed to remove files from Plaintiff's office. Plaintiff told her to leave the files and leave his office.

119.  Subsequently the events of March 12, 2013 took place out of which various actions followed including but not limited to a meeting with Chief of Staff Jane Platten on March 18, 2013.

120. The timing of these events questions the nature and intent of Defendant Walker's conduct and are actions so contrary to appropriate supervision of Plaintiff as to constitute conduct outside of her employment responsibilities.

121. The timing of these events indicate a discriminatory, harassing, threatening and/or retaliatory purpose or intent by Defendant Walker; any such purpose or intent would be improper and/or unlawful and would constitute conduct outside the scope of any protection that otherwise may exist from Defendant Walker's employment including any supervisory role she might have for Plaintiff.

122. That the timing of these events indicates a purpose or intent by Defendant Walker to convey an inaccurate report of the status of Plaintiff's work.

123. That any such purpose or intent by Defendant Walker was undertaken to negatively impact Plaintiff's employment relationship.

124. That the timing and nature of these events indicates a purpose or intent by Defendant Walker to convey an inaccurate report of the status of Plaintiff's work that was malicious and wanton and was undertaken on the basis of personal resentment of Plaintiff and therefore not based upon any valid concern of the Prosecutor's Office or County and were not privileged.

125. That as desire and intent to interfere with Plaintiff's continued business relationship can be attributed to any one or more of Defendants' displeasure with Plaintiff's seeking elective office, said interference is conduct undertaken without the duty to act only to the Office's interests. Without such linkage to valid lawful concerns of the office, the conduct can not facilitate the office's function.

126.   If Defendant's conduct was privileged or qualifiedly privileged interference with business or employment relation, Defendant Walker knew or recklessly disregarded the likelihood that such conduct was wrongful.

127.   That at the meeting of March 18, 2013 an agreement was reached between Jane Platten and Plaintiff that before using any language similar to what was used on March 12, 2013 he would speak to her.

128.   Plaintiff explained why he believed Defendant Walker's orders on March 12, 2013 were improper, discriminatory, harassing, threatening and retaliatory causing him to exit his office for the expressed purpose of filing a complaint for creating a hostile work environment; Plaintiff provided both oral and written notice of filing a hostile work environment complaint on March 12, 2013.

129.   That Defendant Walker's conduct was undertaken with knowledge, if not a substantial certainty, that it would create extreme discomfort and distress to Plaintiff in the desire to interfere with Plaintiff's continued employment with Defendants Cuyahoga and the Cuyahoga Prosecutor's Office.

130.   That Defendant Walker's conduct resulted in interfering with Plaintiff s business and/or employment relationships with Cuyahoga Prosecutor's Office and/or Cuyahoga County.

131. That as a further result of such interfering conduct by Defendant Walker, Plaintiff sustained injury and/or damages including but not limited to: (1) negative impact to business or employment relationship; (2) lost wages; (3) lost advancement opportunities; (4) physical harm or injuries; (5) damages arising from

infliction of serious emotional distress; (6) damage to his self-esteem; and, (7) wrongful termination of his employment.

## COUNT THREE– INTENTIONAL INTERFERENCE WITH BUSINESS AND/OR EMPLOYMENT RELATIONSHIP BY DEFENDANT MARC BULLARD

132. Plaintiff re-alleges the allegations contained in paragraphs one through one hundred thirty-one.

133. Defendant Bullard had no supervisory responsibilities over Plaintiff.

134. In early 2009 Defendant Bullard was removed from major trial work and subsequently he was informed he would be taking over Plaintiff's general felony docket.

135. After this transfer of Plaintiff's docket , Defendant Bullard continued to enlist Plaintiff's assistance.

136. When Plaintiff would meet with Defendant Bullard, Defendant Bullard would not pay attention to Plaintiff and would be typing and/or making phone calls.

137. Then Plaintiff would receive calls or conversations from Defendants O'Malley and/or Smith questioning Plaintiff's use of time.

138. Plaintiff advised Defendant Bullard of the disruptive nature these calls for assistance were having on his current responsibilities and his relationship with his current supervisor.

139. The timing of these events questions the nature and intent of Defendant Bullard's conduct and are actions so contrary to appropriate actions of

co-workers as to indicate a purpose or intent by Defendant Bullard to create and/or convey inaccurate information to those in supervisory positions as to Plaintiff.

140.  That any such purpose or intent by Defendant Bullard was undertaken to negatively impact Plaintiff's employment relationship.

141.  That the timing and nature of these events indicates a purpose or intent by Defendant Bullard to convey an inaccurate reports of the status of Plaintiff's work that was malicious and wanton and therefore not based upon any valid concern of the Prosecutor's Office or County.  If Defendant's conduct was privileged or qualifiedly privileged interference with business or employment relation, Defendant Bullar knew or recklessly disregarded the likelihood that such conduct was wrongful.

142.  That Defendant Bullard's conduct was undertaken with knowledge, if not a substantial certainty and/or in reckless disregard of the likelihood that it would interfere with Plaintiff's continued business and/or employment relationship with the office and create extreme discomfort and distress to Plaintiff in the desire to interfere with Plaintiff's continued employment with Defendants Cuyahoga and the Cuyahoga Prosecutor's Office.

143.  That Defendant Bullard's actions resulted in interfering with Plaintiff's business and/or employment relationships with Cuyahoga Prosecutor's Office and/or Cuyahoga County.

144. That as a further result of such interfering conduct by Defendant Bullard, Plaintiff sustained injury and/or damages including but not limited to: (1) negative impact to business or employment relationship; (2) lost wages; (3) lost

advancement opportunities; (4) physical harm or injuries; (5) damages arising from infliction of serious emotional distress; (6) damage to his self-esteem; and, (7) wrongful termination of employment.

## COUNT FOUR– INTENTIONAL INTERFERENCE WITH BUSINESS AND/OR EMPLOYMENT RELATIONSHIP BY DEFENDANTS MICHAEL O'MALLEY, BEVERLY DEAN, GAYLE WILLIAMS-BYERS, KESTRA SMITH, WILLIAM MASON AND TIMOTHY MCGINTY

145. Plaintiff re-alleges the allegations contained in paragraphs one through one hundred forty-four as if fully rewritten.

146. The timing of the events between Plaintiff and these named defendants as identified in Count Six below questions the nature and intent of Defendants' conduct and are actions so contrary to appropriate supervision of Plaintiff as to constitute conduct outside of their employment responsibilities. If Defendants' conduct was privileged or qualifiedly privileged interference with business or employment relation, Defendants knew or recklessly disregarded the likelihood that such conduct was wrongful.

147. The timing of these events indicate a discriminatory, harassing, threatening and/or retaliatory purpose or intent by Defendants so that any such purpose or intent would be improper and/or unlawful and would constitute conduct outside the scope of any protection that otherwise may exist from Defendants' employment including any supervisory role they might have for Plaintiff.

148. That the timing of these events indicates a purpose or intent by Defendants to convey and perpetuate inaccurate reports of the status of Plaintiff's work knowing or recklessly disregarding the likelihood that such conduct would

interfere with Plaintiff's business or employment relationship with the office and/or county.

149. That any such purpose or intent by Defendants was undertaken to negatively impact Plaintiff's employment relationship.

150. That the timing and nature of these events indicates a purpose or intent by Defendants to convey or perpetuate inaccurate reports of the status of Plaintiff's work that was malicious and wanton and was undertaken on the basis of personal resentment of Plaintiff and therefore not based upon any valid concern of the Prosecutor's Office or County.

151. Defendants' conduct was undertaken with knowledge, if not a substantial certainty, that it would create extreme discomfort and distress to Plaintiff in would interfere with Plaintiff's continued business or employment relationship with Defendants Cuyahoga and the Cuyahoga Prosecutor's Office.

152. Defendant's conduct resulted in interfering with Plaintiff's business and/or employment relationships with Cuyahoga Prosecutor's Office and/or Cuyahoga County.

153. That as a further result of such interfering conduct by Defendant Walker, Plaintiff sustained injury and/or damages including but not limited to: (1) negative impact to business or employment relationship; (2) lost wages; (3) lost advancement opportunities; (4) physical harm or injuries; (5) damages arising from infliction of serious emotional distress; (6) damage to his self-esteem; and, (7) wrongful termination of employment.

## COUNT FIVE– DEFAMATION BY DEFENDANTS JANICE WALKER AND MICHAEL SCALISE

154. Plaintiff re-alleges the allegations contained in paragraphs one through one hundred fifty-three as if fully re-written herein.

154. That Defendants Walker and Scalise prepared written statements and/or made oral statements regarding the events that took place on March 12, 2013; the purpose of said statements were for conveying purported facts.

155. That these events followed a series of workplace occurrences between February 28 and March 11, 2013 that were not covered by their statements.

156. That the actions undertaken by Defendant Walker and the statements made by Defendant Walker were undertaken in a manner that resulted in defamation of Plaintiff and/or discriminatory, harassing and/or retaliatory practice prohibited by Federal and State statutes.

157. That as such Defendant Walker is not entitled to any privileges or protections that might otherwise be available due to her work position including but not limited to any supervisory functions she might have in relation to Plaintiff's work.

158. That the actions and statements both written and oral by Defendant Walker were meant to convey information that was known not to be true or with reckless disregard for its truth or falsity.

159. That the actions and statement by Defendant Walker were undertaken with actual malice towards Plaintiff.

160.   That the statements both written and oral of Defendant Scalise were known to contain matters that were not true and/or of which he recklessly disregarded the truth or falsity of such statements.

161.   That these matters were reviewed by Cuyahoga County Prosecutor's Chief of Staff Jane Platten during a meeting on March 18, 2013 whereat an understanding was reached that should similar situations arise Plaintiff would contact Ms. Platten as opposed to using certain language in response to such events.

162.  No similar understandings were struck regarding any claims made by Defendants Walker or Scalise of Plaintiff's alleged aggression and/or violence directed toward them.

163.   That Defendant Walker's statements both written and oral resulted in interfering with Plaintiff's business and/or employment relationships with the Cuyahoga County Prosecutor's Office and/or the County of Cuyahoga, Ohio.

164.   That as a further result of such statements by Defendant Walker, Plaintiff sustained injury and/or damages including but not necessarily limited to: (1) negative impact to business or employment relationship; (2) lost wages and/or lost advancement opportunities; (3) damages arising from physical harm or injuries; (4) damages arising from in infliction of serious emotional distress; (5) damage to his self-esteem; (6) damage to his reputation within his employment; and, (7) wrongful termination of employment.

165.   That Defendant Scalise's statements both written and oral resulted in interfering with Plaintiff business and/or employment relationships with the Cuyahoga County Prosecutor's Office and/or the County of Cuyahoga, Ohio.

166.   That the actions and statements both written and oral by Defendant Scalise were meant to convey information that was known not to be true or with reckless disregard for its truth or falsity.

167.   That the actions and statement by Defendant Scalise were undertaken with actual malice towards Plaintiff

168.   That as a further result of such statements by Defendant Scalise, Plaintiff sustained injury and/or damages including but not necessarily limited to: (1) negative impact to business or employment relationship; (2) lost wages and/or lost advancement opportunities; (3) damages arising from physical harm or injuries; (4) damages arising from in infliction of serious emotional distress; (5) damage to his self-esteem; (6) damage to his reputation within his employment; and, (7) wrongful termination of employment.

### COUNT SIX – DISCRIMINATON BY DEFENDANTS RICHARD BELL, MICHAEL O'MALLEY, BEVERLY DEAN,  GAYLE WILLIAMS-BYERS, KESTRA SMITH, WILLIAM MASON, JANNICE WALKER, TIMOTHY MCGINTY, THE CUYAHOGA COUNTY PROSECUTOR'S OFFICE, THE COUNTY OF CUYAHOGA, THE CUYAHOGA COUNTY HUMAN RESOURCE OFFICE, UN-NAMED BRANCH OF CUYAHOGA COUNTY

169.   Plaintiff re-alleges the allegations contained in paragraphs one through  one hundred sixty-eight as if fully rewritten herein.

30

170. Plaintiff's claims for discrimination are based upon his being an individual with a disability as contained in the provisions and prohibitions of: (a) The Americans with Disabilities Act 42 U.S.C. ; more specifically 42 U.S.C. 12112(a) and 12203(a) and, (b) Ohio Revised Code Chapter 4112 – Civil Rights Commission and more specifically ORC 4112.02 – Unlawful Discriminatory Practices. Despite these classifications, Plaintiff was qualified for the position held and displayed the ability to perform the essential requirements of that position.

171. Defendants are either covered entities or employees of covered entities as defined by the cited statutes and subject to the statutes' prohibitions.

172. Defendants knew that Plaintiff was a protected disabled person.

173. Defendants considered Plaintiff to be a person who qualified for the protections of the above identified statutory provisions.

174. Prior to 2009 Plaintiff sought and received certain accommodations as a person qualifying for the statutory protections.

175. The Policies and Procedures of Defendant County of Cuyahoga provide the processes to be used in requests for accommodations and for the handling of reports of violations of the protections afforded to people who qualify as a disabled person.

176. The Policies and Procedures of Defendant County of Cuyahoga provide for the process of assessing whether reasonable accommodations are available and for the institution, review and if necessary the modification over time of the accommodations provided to people who qualify as a disabled person.

177.  The Policies and Procedures of Defendant Cuyahoga County Prosecutor's Office provides for the process of assessing whether reasonable accommodations are available and for the institution, review and if necessary the modification over time of the accommodations provided to people who qualify as a disabled person.

178.  Despite Plaintiff's status as a disabled person, his prior requests resulting in accommodations, the statutory prohibitions and the processes provided by the indicated manuals, defendants independently from each other engaged in discriminatory acts against Plaintiff including but not limited to the hiring, upgrading, promotion, demotion, transfer, termination, rates of pay or compensation, job assignments, position descriptions, lines of progression, increased scrutiny, unjustified work evaluations and demeaning comments, and other adverse employment action(s).  That these actions include but not necessarily limited to the following:

A.  **Richard Bell**

- Knowing Plaintiff's desire for and success in trial work, and knowing computers and an additional prosecutor would soon be available on the floors, Defendant advocated for moving Plaintiff to work he was less suited for and would find difficult given his disabilities.
- Undertook this conduct knowing or being in reckless disregard that his conduct was outside of his scope of employment or otherwise unprivileged conduct

B.  **Michael O'Malley**

- Despite Plaintiff's concern for his well-being transferred Plaintiff to work that Plaintiff would have more difficulties with given his disabilities.
- Knowing computers and an additional prosecutor would soon be available on the floors, Defendant

advocated for moving Plaintiff to work he was less suited for and would find difficult given his disabilities.

- Failing to acknowledge or act upon Plaintiff's requests for accommodations.
- Agreeing to how matters were to be resolved and then allowing Plaintiff's supervisors to pursue matters differently.
- Allowing Plaintiff's supervisors to engage in public reprimands of Plaintiff.
- Belittling Plaintiff and/or his disabilities.
- Failing to advocate for Plaintiff in regards to even the simple request for parking accommodations.
- Failing to address Plaintiff's concern over disparate compensation.
- Failing to address Plaintiff's complaints of discrimination and retaliation.
- Causing Plaintiff's work environment to be hostile with the purpose of having Plaintiff voluntarily quit to avoid problems caused by Defendant's treatment of Plaintiff.
- Creating problems at the start of each new work assignment.

## C.   <u>Beverly Dean</u>

- Failing to acknowledge or act upon Plaintiff's requests for accommodations.
- Allowing Plaintiff's supervisors to engage in public reprimands of Plaintiff.
- Belittling Plaintiff and/or his disabilities.
- Failing to advocate for Plaintiff in regards to even the simple request for parking accommodations.
- Failing to address Plaintiff's concern over disparate compensation.
- Failing to address Plaintiff's complaints of discrimination and retaliation.
- Causing Plaintiff's work environment to be hostile with the purpose of having Plaintiff voluntarily quit to avoid problems caused by Defendant's treatment of Plaintiff.
- Failing to conduct her responsibilities under the various work manuals and comply with the procedures.
- Making comments that demeaned Plaintiff and belittled his limitations.

**D.**  **Gayle Williams-Beyers**

- Publicly reprimanded and/or disciplined Plaintiff.
- Imposed unreasonable requirements upon Plaintiff.
- Completed an unjustified evaluation regarding Plaintiff.
- Failing to advise Plaintiff of changes to his responsibilities

**E.**  **Kestra Smith**

- Subjected Plaintiff to disparate levels of scrutiny.
- Assigned Plaintiff duties that would increase problems caused by his disabilities.
- Failure to provide requested accommodation.
- Treated Plaintiff's responsibilities for holdover appellate work differently than she treated similar responsibilities for another of a different race.
- Imposed discipline unequally and dependent upon race.
- Failed to consider Plaintiff's reports regarding inefficiencies of support staff of a different race while considering and issuing discipline upon Plaintiff as a result of reports by support staff of a different race.
- Publicly reprimanded and disciplined Plaintiff.
- Publicly challenged Plaintiff's pace of work and retaliated to Plaintiff's challenge with unjustified reprimands and/or evaluation.
- Assigned work not required from other.
- Belittled Plaintiff's work and made multiple requests for same work product.
- Sent staff to inquire regarding impact of disabilities.
- Failure to recognize and notify office of work Plaintiff did in Pula case.
- Knowing or recklessly disregarding misleading, unjustified and/or incorrect nature of her reports on Plaintiff's work.

**F.**  **Janice Walker**

- In addition to items raised in other counts made unjustified evaluations and reprimands.
- Failure to report act upon Plaintiff's request for accommodations.
- Subjected Plaintiff to heightened scrutiny.

- Made comments that were meant to create distress and pressure to Plaintiff about his being watched and regarding the office willingness to pay for his scooter.
- Differential treatment for similar work.

G.    **William Mason**

- Approved transferring Plaintiff out of General Felony Unit despite Plaintiff's concerns regarding disability.
- Denied Plaintiff's request for equality of compensation.
- If not primarily involved in acts of discrimination ratified and/or acquiesced in the acts of others.
- Failure to provide and/or advocated for accommodations.
- Denied Plaintiff's requests for different assignments.
- Failed to follow procedures for addressing accommodation.
- Used Plaintiff's limitations to place Plaintiff into situations where he would fail.

H.    **Timothy McGinty**

- Failed to take correspondence from Plaintiff as allegations of discrimination.
- Instead made assessment that Plaintiff's concerns over prior treatment and labeled Plaintiff as having a bad attitude.
- Said meetings to allow for the airing of Plaintiff's concerns would take place and when they did not held Plaintiff's concerns against him.
- Terminated Plaintiff less than a day after Plaintiff met with Jane Platten to inform the office of the imminent filing of legal action covering among other causes, discrimination.
- Permitted named Defendants to disregard valid complaints by Plaintiff and requests for filing a charge with the EEOC.
- Failed to enforce stated policies for handling matters of discrimination, threats, hostility and retaliation.
- Failure to address concerns regarding disparity in compensation.

I.   **County of Cuyahoga**

- Failure to enforce policies and procedures in handling issues of discrimination, retaliation and accommodations.
- Failure to timely and appropriately address issue of accommodations.
- Permitting such requests to be answered in demeaning and/or belittling fashion.
- Vicariously liable for actions of employees and ratification, acquiescing, participating in acts of others.
- Failing to provide underground disabled parking even though such was available and when underground parking was assigned it disregarded its location.
- Used personal attacks to discourage Plaintiff pursuing his rights.

J.   **Cuyahoga County Prosecutor's Office**

- Failure to enforce policies and procedures in handling issues of discrimination, retaliation and accommodations.
- Failure to timely and appropriately address issue of accommodations.
- Permitting such requests to be answered in demeaning and/or belittling fashion.
- Vicariously liable for actions of employees and ratification, acquiescing, participating in acts of others.
- Failing to provide underground disabled parking even though such was available and when underground parking was assigned it disregarded its location.
- Used personal attacks to discourage Plaintiff pursuing his rights.

K.   **Cuyahoga County Department of Human Resources**

- Failure to enforce policies and procedures in handling issues of discrimination, retaliation and accommodations.
- Failure to timely and appropriately address issue of accommodations.
- Permitting such requests to be answered in demeaning and/or belittling fashion.
- Vicariously liable for actions of employees and ratification, acquiescing, participating in acts of others.

- Failing to provide underground disabled parking even though such was available and when underground parking was assigned it disregarded its location.
- Used personal attacks to discourage Plaintiff pursuing his rights.

### J.  Un-named Department of Cuyahoga County

- Failure to enforce policies and procedures in handling issues of discrimination, retaliation and accommodations.
- Failure to timely and appropriately address issue of accommodations for parking.
- Vicariously liable for actions of employees and ratification, acquiescing, participating in acts of others.
- Failing to provide underground disabled parking even though such was available and when underground parking was assigned it disregarded its location.

179.  Despite Plaintiff's status as a disabled person, his prior requests resulting in accommodations, the statutory prohibitions and the processes provided by the indicated manuals, defendants either independent from one another or in concert with one or more of each other engaged in discriminatory acts against Plaintiff including but not limited to the hiring, upgrading, promotion, demotion, transfer, termination, rates of pay or compensation, job assignments, position descriptions, lines of progression negatively influencing new supervisory employees at points of changing job responsibilities, increased scrutiny, unjustified work evaluations and demeaning comments, and other adverse employment action(s).

180.  Despite Plaintiff's status as a disabled person, his prior requests resulting in accommodations, the statutory prohibitions and the processes provided by the indicated manuals, Defendant Entities either independent from one other defendants another or in concert with one or more of the Defendants, and either as

primary actor or via respondeat superior or vicarious liability for the acts of other defendants engaged in discriminatory acts against Plaintiff including but not limited to the hiring, upgrading, promotion, demotion, transfer, termination, rates of pay or compensation, job assignments, position descriptions, lines of progression negatively influencing new supervisory employees at points of changing job responsibilities, increased scrutiny, unjustified work evaluations and demeaning comments, and other adverse employment action(s).

181. That such actions were undertaken in a manner or for the purpose of exploiting Plaintiff's disabling limitations.

182. That despite continually raising these concerns and requesting their review the actions were either taken personally by individual Defendants or in concert with other Defendants or were undertaken in supervisory roles either through condoning, tolerating, or encouraging such acts or as other inadequate response to Plaintiff's reports as to constitute manifest indifference or unreasonableness under the circumstances.

182. That such actions by Defendants were so contrary to the best interest of Defendant Employers so as to be outside the scope of employment and/or undertaken with knowledge or reckless disregard as to the wrongfulness of such conduct.

183. That as such actions by Defendants were related to the election process that does not fall within the statutory duties of a county prosecutor's office so as to be beyond the best interest of Defendant Employers so as to be outside the

scope of employment and/or undertaken with knowledge or reckless disregard as to the wrongfulness of such conduct.

184. That as implemented Defendants' conduct toward Plaintiff as to create a situation of disparate impact that is unjustifiable and/or deprived Plaintiff of meaningful access to the position of trial counsel in the general felony unit of which Plaintiff was able to perform the essential functions of the position and or which, with reasonable accommodations could perform the essential functions of the position.

185. That the assignment of duties were undertaken in a fashion that Plaintiff was placed into situations of heightened likelihood of lack of success due to matters linked to limitations caused by his disabling conditions of which Defendants knew or recklessly disregarded the likelihood of interfering with his ability to succeed.

186. That in addition to being placed into situations where Defendants knew or recklessly disregarded the likelihood of Plaintiff's disabilities interfering with Plaintiff's ability to succeed, he was subjected to differing treatment of assignments and evaluation methods on the basis of sex and race.

186. That as a result of such discriminatory acts by Defendants independent from one another and/or in concert with one or more of the others Plaintiff has been caused to suffer injury including but not necessarily limited to: (a) negative impact to business or employment relationship; (b) lost wages and/or lost advancement opportunities; (c) lost earnings due to discriminatory salary adjustments; (d) damages arising from physical harm or injuries; (e) damages

arising from infliction of serious emotional distress; (f) damage to his self-esteem;

(g) negative reports and/or evaluations resulting in adverse in his employment; and

(h) termination from his employment.

### COUNT SEVEN – HARASSMENT/ HOSTILE WORK ENVIRONMENT BY DEFENDANTS RICHARD BELL, MICHAEL O'MALLEY, BEVERLY DEAN, GAYLE WILLIAMS-BYERS, KESTRA SMITH, WILLIAM MASON, JANNICE WALKER, TIMOTHY MCGINTY, THE CUYAHOGA COUNTY PROSECUTOR'S OFFICE, THE COUNTY OF CUYAHOGA, THE CUYAHOGA COUNTY HUMAN RESOURCE OFFICE, UN-NAMED BRANCH OF CUYAHOGA COUNTY

187.  Plaintiff re-alleges the allegations contained in paragraphs one through one hundred eighty-six as if fully rewritten herein including the factual allegations contained in Count Six for each defendant.

188. Plaintiff bases his claims for discriminatory harassment upon the provisions and prohibitions contained in: (a) The Americans with Disabilities Act 42 U.S.C. and more specifically 42 U.S.C. 12112(a); (b) The Americans with Disabilities Act and more specifically 42 U.S.C. 12203(b) focusing on coercion, interference and intimidation in the exercise or enjoyment of any right granted or protected under the provisions of the ADA;(c) Ohio Revised Code Chapter 4112 – Civil Rights Commission and more specifically ORC 4112.02 – Unlawful Discriminatory Practices.  Despite these classifications, Plaintiff was qualified for the position held and displayed the ability to perform the essential requirements of that position.

189.  That despite Plaintiff's status as a disabled person, his prior requests resulting in accommodations, the statutory prohibitions and the processes

provided by the indicated manuals, defendants independently from each other engaged in discriminatory acts against Plaintiff including but not limited to the hiring, upgrading, promotion, demotion, transfer, termination, rates of pay or compensation, job assignments, position descriptions, lines of progression, increased scrutiny, unjustified work evaluations and demeaning comments that took the form of  unlawful coercion, intimidation, threatening, or interfering with Plaintiff in the exercise or enjoyment of, or on account of his having exercised or enjoyed any right granted or protected by the ADA as amended.

190.  That despite Plaintiff's status as a disabled person, his prior requests resulting in accommodations, the statutory prohibitions and the processes provided by the indicated manuals, defendants in concert with one or more of each other engaged in discriminatory acts against Plaintiff including but not limited to the hiring, upgrading, promotion, demotion, transfer, termination, rates of pay or compensation, job assignments, position descriptions, lines of progression negatively influencing new supervisory employees at points of changing job responsibilities, increased scrutiny, unjustified work evaluations and demeaning comments that took the form of  unlawful coercion, intimidation, threatening, or interfering with Plaintiff in the exercise or enjoyment of, or on account of his having exercised or enjoyed any right granted or protected by the ADA as amended and Revised Code Chapter 4112.

191.  That these acts by Defendants either independent from acts by other Defendants or in concert with one or more of the Defendants were discriminatory, harassing, intimidating, hostile, demeaning and/or retaliatory and

were undertaken intentionally and for the purpose of causing emotional distress or other injury or insult to Plaintiff including causing Plaintiff to respond either by making errors in his work or making responses that could form the basis for discipline or to cause Plaintiff to leave his employment.

192.  Despite Plaintiff's status as a disabled person, his prior requests resulting in accommodations, the statutory prohibitions and the processes provided by the indicated manuals, Defendant Entities either independent from one other defendants another or in concert with one or more of the Defendants, and either as primary actor or via respondeat superior or vicarious liability for the acts of other defendants engaged in discriminatory acts against Plaintiff including but not limited to the hiring, upgrading, promotion, demotion, transfer, termination, rates of pay or compensation, job assignments, position descriptions, lines of progression negatively influencing new supervisory employees at points of changing job responsibilities, increased scrutiny, unjustified work evaluations and demeaning comments.

193.  That such actions were undertaken in a manner or for the purpose of exploiting Plaintiff's disabling limitations.

194.  That such acts of discrimination were in response to Plaintiff's pursuit of his rights to be free from such discriminatory actions affecting terms, conditions or status of employment and were in response to Plaintiff's raising questions about the treatment he was subjected to.

195.  That despite continually raising these concerns and requesting their review the actions were either taken personally by individual Defendants or in concert with other Defendants or were undertaken in supervisory roles either

through condoning, tolerating, or encouraging such acts or as other inadequate response to Plaintiff's reports as to constitute acquiescence, manifest indifference or unreasonableness under the circumstances.

196. That these actions were not only directly in violation of the statutory prohibitions and/or were undertaken for the purpose of dissuading Plaintiff from pursuing his reasonable requests for accommodation or from pursuing other legal remedies available, but also to cause Plaintiff to chose to leave his employment.

197. That as a result of such discriminatory acts by Defendants independent from one another and/or in concert with one or more of the others Plaintiff has been caused to suffer injury including but not necessarily limited to: (a) negative impact to business or employment relationship; (b) lost wages and/or lost advancement opportunities; (c) lost earnings due to discriminatory salary adjustments; (d) damages arising from physical harm or injuries; (e) damages arising from infliction of serious emotional distress; (f) damage to his self-esteem; (g) negative reports and/or evaluations resulting in adverse in his employment; and (h) termination from his employment.

**COUNT EIGHT - RETALIATION - BY DEFENDANTS MICHAEL O'MALLEY, BEVERLY DEAN,  GAYLE WILLIAMS-BEYERS, KESTRA SMITH, WILLIAM MASON, JANNICE WALKER, TIMOTHY MCGINTY, THE CUYAHOGA COUNTY PROSECUTOR'S OFFICE, THE COUNTY OF CUYAHOGA, THE CUYAHOGA COUNTY HUMAN RESOURCE OFFICE, UN-NAMED BRANCH OF CUYAHOGA COUNTY**

198. That Plaintiff re-alleges the allegations contained in paragraphs one through one hundred ninety-seven as if fully rewritten herein.

199. Plaintiff was qualified for the position held and displayed the ability to perform the essential requirements of that position.

200. That despite Plaintiff's status as a disabled person, his prior requests resulting in accommodations, the statutory prohibitions and the processes provided by the indicated manuals, defendants independent from one another engaged in discriminatory acts against Plaintiff including but not limited to the hiring, upgrading, promotion, demotion, transfer, termination, rates of pay or compensation, job assignments, position descriptions, lines of progression negatively influencing new supervisory employees at points of changing job responsibilities, increased scrutiny, unjustified work evaluations and demeaning comments in the form of retaliatory discrimination as a result of Plaintiff's opposition to acts or practices made unlawful by this chapter or because Plaintiff filed a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

201. That despite Plaintiff's status as a disabled person, his prior requests resulting in accommodations, the statutory prohibitions and the processes provided by the indicated manuals, defendants in concert with one or more of each other engaged in discriminatory acts against Plaintiff including but not limited to the hiring, upgrading, promotion, demotion, transfer, termination, rates of pay or compensation, job assignments, position descriptions, lines of progression negatively influencing new supervisory employees at points of changing job responsibilities, increased scrutiny, unjustified work evaluations and demeaning comments in the form of retaliatory discrimination as a result of Plaintiff's opposition to acts or

practices made unlawful by this chapter or because Plaintiff a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

202.  That these acts by Defendants independent from similar acts by other Defendants and/or in concert with one or more of the other defendants were discriminatory, harassing, intimidating, hostile, demeaning and/or retaliatory and were undertaken intentionally and for the purpose of causing emotional distress or other injury or insult to Plaintiff including causing Plaintiff to respond either by making errors in his work or making responses that could form the basis for discipline or to cause Plaintiff to leave his employment.

203.  That such actions were undertaken in a manner or for the purpose of exploiting Plaintiff's disabling limitations.

204.  That such acts of discrimination were in retaliation of Plaintiff's pursuit of his rights to be free from such discriminatory actions affecting terms, conditions or status of employment and were in response to Plaintiff's raising questions about the treatment he was subjected to.

205.  That despite continually raising these concerns and requesting their review the actions were either taken personally by individual Defendants or in concert with other Defendants or were undertaken  in supervisory roles either through condoning, tolerating, or encouraging such acts of retaliation and/or are otherwise inadequate response to Plaintiff's reports so as to constitute manifest indifference or unreasonableness under the circumstances.

206. That these actions were not only directly in violation of the provisions they also were under taken for the purpose dissuading Plaintiff from pursuing his reasonable requests for accommodation or from pursuing legal remedies available to him.

207. Despite Plaintiff's status as a disabled person, his prior requests resulting in accommodations, the statutory prohibitions and the processes provided by the indicated manuals, Defendant Entities either independent from other defendants or in concert with one or more of the Defendants, and either as primary actor or via respondeat superior or vicarious liability for the acts of other defendants engaged in discriminatory acts against Plaintiff including but not limited to the hiring, upgrading, promotion, demotion, transfer, termination, rates of pay or compensation, job assignments, position descriptions, lines of progression negatively influencing new supervisory employees at points of changing job responsibilities, increased scrutiny, unjustified work evaluations and demeaning comments.

208. That as a result of such discriminatory acts Plaintiff has been caused to suffer injury including but not necessarily limited to: (a) negative impact to business or employment relationship; (b) lost wages and/or lost advancement opportunities; (c) lost earnings due to discriminatory salary adjustments; (d) damages arising from physical harm or injuries; (e) damages arising from infliction of serious emotional distress; (f) damage to his self-esteem; (g) negative reports and/or evaluations resulting in adverse in his employment; and (h) termination from his employment; and (i) underutilization of Plaintiff's strengths.

**COUNT NINE - INTENTIONAL AND/OR NEGLIGENT INFLICTION OF
SERIOUS EMOTIONAL DISTRESS BY DEFENDANTS RICHARD BELL,
MICHAEL O'MALLEY, BEVERLY DEAN, MARC BULLARD, GAYLE
WILLIAMS-BYERS, KESTRA SMITH, WILLIAM MASON, JANNICE
WALKER, TIMOTHY MCGINTY, THE CUYAHOGA COUNTY
PROSECUTOR'S OFFICE, THE COUNTY OF CUYAHOGA, THE CUYAHOGA
COUNTY HUMAN RESOURCE OFFICE, UN-NAMED BRANCH OF
CUYAHOGA COUNTY**

209.  Plaintiff re-alleges the allegations contained in paragraphs one

through two hundred eight as if fully rewritten.

210.  Plaintiff was born on May 6, 1952.

211.  In October, 1953 Plaintiff was stricken with polio and has since

that time lived with a full leg brace and increasingly uses crutches.

212.  That growing up Plaintiff engaged in significant physical

activities.

213.  Approximately 25 years ago, Plaintiff began to experience

muscle weakness and pain and was subsequently diagnosed with post-polio

syndrome, the early wearing out of rejuvenated motor units that causes the dying

off of nerves leading to new muscle atrophy back towards the spinal cord.  The best

medical advice is to conserve to preserve.  This has been provided to some of the

defendants both orally and by way of articles.

214.  The corresponding lessening of physical activity has resulted in

Plaintiff becoming diabetic.

215.  As a result of these new problems, Plaintiff sought counseling

and began to take medicine to combat his depression and continues this to date.

216. In November, 1997 Plaintiff's middle son was diagnosed with acute myeloid leukemia. On November 24, 1997 he died on Plaintiff's oldest son's eighteenth birthday.

217. In June, 1999 Plaintiff was diagnosed with Non-Hodgkin's Lymphoma and underwent chemotherapy and a splenectomy.

218. Plaintiff served on Solon City Council from March 1996, through December, 2001 and ran for mayor in 2001 and 2005.

219. Plaintiff, concerned about the impact of not continuing to work, applied for a position with the Cuyahoga County Prosecutor because he enjoyed and was proficient in trial work.

220. When Plaintiff was being removed from trial work, he advised his superiors of the nature of post-polio as well as the dogged mentality of pushing harder that was used by most polio survivors to overcome the initial limitations from the disease.

221. Plaintiff notified his superiors that this defense mechanism was no longer effective in overcoming the new limitations being faced; in fact pushing harder now leads to accelerated loss of capabilities.

222. Concentration and focus often are negatively impacted.

223. Despite this information, the named defendants and the political subdivision defendants undertook independently and/or in concert with one or more of the other defendants to place Plaintiff into situations where the impact of Plaintiff's disabilities would be exaggerated causing exacerbation to his psychological issues and their effect.

224. Plaintiff advised Defendants that this would happen.

225. In addition to placing Plaintiff into situations where he would struggle to succeed, Defendants subjected Plaintiff to demeaning comments when he requested accommodations and requested to be returned to the courtroom.

226. These included being told that he was not disabled, a comment that caused him to photograph himself in response. Chief of Staff Jane Platten apologized for this conduct at the meeting on April 4, 2013.

227. Plaintiff advised his superiors that this treatment was not only interfering with his ability to perform his work, it was causing intrusive thoughts about his disability that were causing additional problems in concentrating on the increasing amount of manual manipulative tasks that he was being assigned.

228. Defendants failed to respond to Plaintiff's complaints regarding his treatment for raising issues of his disability and requests for accommodations.

229. At no time were arrangements made to transport files and ultimately Plaintiff obtained a scooter at his expense for this assistance.

230. Defendant Walker even declared to Plaintiff that had Plaintiff requested the Office would have paid for it. This comment was denied by Joseph Young and Defendant Dean raising a question as to why it was made.

231. That Plaintiff tried to satisfy the Defendants.

232. Plaintiff extended his hours at work without seeking added compensation.

233. Plaintiff continued to work for disparate compensation.

49

235.  Plaintiff continued to seek accommodations only to be told he never asked for such.

236.  Then when Plaintiff felt threatened by the manipulation undertaken by Defendant Walker, Plaintiff exerted his rights to ignore any directions that he reasonably found to be discriminatory, hostile and/or retaliatory, and left his office to file a complaint for creating a hostile work environment.

237.  Thereafter a meeting was held on March 18, 2013; a meeting that was to discuss all of his employment issues but which clearly was being treated as a disciplinary meeting by Defendants or their representatives against Plaintiff.

238.  When Plaintiff objected to the disciplinary nature and lack of notice of such, the meeting wound down.  Plaintiff believes the questions he raised have led to Defendants modifying their process and methods of giving notice.

239.  As with Plaintiff's earlier complaints of discrimination, harassment and retaliation, the present hostile work environment was not and has not been discussed or investigated contrary to the policies and procedures contained in the County's and Office's employment manuals and this lack of response was contrary to similar concerns raised by others.

240. After meeting on April 4, 2013 for one last chance at resolving Plaintiff's issues before he needed to file his legal action, Plaintiff was terminated and escorted out by an investigator mid-day on April 5, 2013 in front of co-workers.

241.  Plaintiff understands the honor and responsibilities of public service.

242.  Plaintiff did not frivolously miss work; he donated time to those facing medical needs.

243.  Plaintiff was attentive to the needs and concerns of younger attorneys and tried to encourage them to remain with the office.

244.  It was never enough.

245.  Defendants' conduct and statements increased the stress and exacerbated Plaintiff's depression.

246.  Defendants' actions and statements continued even when Plaintiff complained leading to one conclusion:  Defendants intended to make Plaintiff's work more difficult and less rewarding in the hope that Plaintiff would leave on his own and thereby resolve the problems generated by the initial removal of Plaintiff from the courtroom.

247. That given the disclosures of the limits of his condition(s), and the complaints seeking accommodations, Defendants' failure to respond and continued demeaning comments and actions can only be held to be extreme and outrageous and beyond the bonds of decency and intolerable in any civilized society.

248.  That Defendants' actions, omissions and comments were the proximate cause of his psychiatric injury and or exacerbation of pre-existing mental conditions.

249.  That the mental anguish suffered by Plaintiff was so severe in nature and extent that no reasonable person, and certainly no reasonable person with Plaintiff's condition(s), could or should be expected to endure; yet, Plaintiff endured four years.

250. When Plaintiff left his office on March 12, 2012 to lodge a complaint for hostile work environment, he had reached his limit.

251. Plaintiff reported worsening symptoms of depression to his doctors including loss of self esteem and confidence.

252. He was resolute in his conviction to pursue his legal remedies but hopeful of resolving the matters when he met with Jane Platten on April 4, 2013. 2013.

253. That as a result of such acts by Defendants, Plaintiff has been caused to suffer damages arising from infliction of serious emotional distress; damage to his self-esteem; and (i) underutilization of Plaintiff's strengths.

## COUNT TEN - WRONGFUL TERMINATION BY BY DEFENDANTS RICHARD BELL, MICHAEL O'MALLEY, BEVERLY DEAN, MARC BULLARD, GAYLE WILLIAMS-BYERS, KESTRA SMITH, WILLIAM MASON, JANNICE WALKER, TIMOTHY MCGINTY, THE CUYAHOGA COUNTY PROSECUTOR'S OFFICE, THE COUNTY OF CUYAHOGA, THE CUYAHOGA COUNTY HUMAN RESOURCE OFFICE, UN-NAMED BRANCH OF CUYAHOGA COUNTY

A. **In Violation of Specific Statutory Prohibitions**

254. Plaintiff re-alleges the allegations contained paragraphs one through two hundred fifty-three as if fully re-written.

255. Plaintiff sought employment with Defendants Cuyahoga County and the Cuyahoga County Prosecutor's Office in order to have one centralized location and to try cases.

256. Once Plaintiff was transferred to the General Felony Unit he was responsible for room prosecutions.

257.  His trial record was above the norm for the Office.

258.  In January, 2008 he received high evaluation for his work during 2007 that was completed by Saleh Awadallah and Dave Zimmerman.

259.  The Assessment of the Office performed by new Prosecutor Defendant Timothy McGinty found that the evaluation process tended to deflate evaluation results.

260.  Plaintiff was not evaluated for his work in 2008 which should have been issued early in 2009.

261.  Plaintiff was informed that he was being removed from trial responsibilities on April 30, 2009.

262.  Plaintiff was concerned about the negative impacts such a move would have and expressed his concerns to all Defendants Bell, O'Malley and Mason but to no avail and then prepared a memorandum of his concerns dated May 9, 2009 that was provided to Defendants O'Malley, Dean and Mason.

263.  Subsequent to the move Plaintiff continued to make requests, both written and oral for accommodative measures including being returned to the courtroom.

264.  These communications included questioning the propriety of the changes to Plaintiff's responsibilities, the fairness of his compensation, public questioning of his pace of work, heightened scrutiny of his work, challenges to discipline, the nature of the work being assigned, differential treatment in similar work situations, questioning the nature of written and/or oral reprimands, the

retaliatory nature of discipline or reprimands, the underutilization of Plaintiff's abilities.

265.  That Plaintiff made similar communications when Mr. McGinty became the prosecutor.

266.  That after supplying the May 8, 2009 memo to his supervisor a meeting was scheduled with Defendant Dean at which meeting Plaintiff requested assistance in filing an EEOC Complaint for what he considered discriminatory, harassing and retaliatory conduct by his employer and the various defendants and when Plaintiff received either no or dilatory responses to his requests Plaintiff again communicated his dissatisfaction with the process.

267.  This resulted in communication stated as coming from Defendant McGinty that Plaintiff, though dealing with significant physical limitations, had a "bad attitude".

268.  Plaintiff continued to question the status of his requests for accommodations and the office's failure to follow its procedures for instituting such accommodations which resulted in his being threatened that he was being placed under even tighter scrutiny.

269.  That as a result of these threats and events that followed he was subjected to yet more unwarranted discipline, harassing and discriminatory and/or retaliatory orders.

270.  Plaintiff  facing an approaching statute of limitations regarding a claim for interference with employment relationship and Plaintiff requested to meet with Jane Platten, Chief of Staff for Defendant Cuyahoga County Prosecutor's

Office to try one last time to resolve his matters short of filing legal action and this meeting was held on the afternoon of April 4, 2013.

271. At said meeting Plaintiff discussed the nature of his causes of action and the people against whom such actions might lie. Included in those discussions was the display of an e-mail from Ms. Dean in which Defendant McGinty stated his perception of Plaintiff's "bad attitude" along with Plaintiff's inquiry of how such a determination could be made without ever having spoken with Plaintiff.

272. That late in the morning of April 5, 2013 Plaintiff was notified that he was terminated.

273. That said termination was a result and was in response to Plaintiff's pursuit of his rights to challenge what were violations under provisions of Federal and State statutes against discrimination due to his disability and therefore was wrongful.

274. That Plaintiff's termination was the result of the actions and/or reports by each individual defendant independent from other defendants, and/or in concert with one or more of such defendants and/or either as each defendant's primary action of as respondeat superior, vicarious liability, and or bt acqiescin, ratifying participating, accepting, failing to rectify the primary actions of any one defendant.

275. Plaintiff's termination was contrary to the public policies contained within the statutory prohibitions identified and was wrongful.

276.  That as a result of such discriminatory acts Plaintiff has been caused to suffer injury including but not necessarily limited to: (a) negative impact to business or employment relationship; (b) lost wages and/or lost advancement opportunities; (c) lost earnings due to discriminatory salary adjustments; (d) damages arising from physical harm or injuries; (e) damages arising from infliction of serious emotional distress; (f) damage to his self-esteem; (g) negative reports and/or evaluations resulting in adverse in his employment; and (h) termination from his employment; and (i) underutilization of Plaintiff's strengths.

### B.      In Contravention of Public Policy

277.  Plaintiff re-alleges the allegations contained in paragraphs one through two hundred seventy-six as if fully incorporated herein as if re-written.

278. That the duties and responsibilities of county prosecutors in Ohio are defined by statute and specifically ORC Sections 309.08 and 309.09.

279. That these sections do not include the selection or limiting of candidates for elective office be it on the federal, state, county or local level.

280. That under the control of Defendant Mason, employees were encouraged to seek elective office.

281.  Plaintiff indicated that he was considering running for local offiice.

282.  Subsequent to this, Defendant Bell threatened Plaintiff regarding Plaintiff's considering seeking election.

283.  Subsequent to said threats Plaintiff was removed from his

responsibilities as a trial prosecutor and placed in successive positions that did not allow Plaintiff to utilize his strengths as a trial attorney into positions known to be or likely to be difficult for Plaintiff to perform with the expectation of Plaintiff's inability to perform and/or which would cause or likely cause Plaintiff to decide to leave the office.

284.  This move resulted in the notices, correspondence and meetings identified above and ultimately led to Plaintiff's discharge.

285.  That as it was being used in regards to local elections (whether partisan or non-partisan) the impacting of Plaintiff's employment or any other employee who chose to pursue such elective office, the right of free speech and/or liberty interests were being unduly impacted by personal choices having no relation to the statutory duties of a county prosecutor.

286.  That as implemented in this case and therefore potentially capable of implementing in any case, creates a situation where liberty rights and free speech rights (as contained in the Ohio Constitution, U.S. Constitution and/or Declaration of Independence were not being provided equal protection of law.

287.  As implemented in this case and therefore potentially subject to implementation in any case and without being a proper function of a county prosecutor's office is such interference upon the free and open election process that there is a public policy to encourage and protect.

288.  That Plaintiff's termination was the result of the actions and/or reports by each individual defendant independent from other defendants, and/or in concert with one or more of such defendants and/or either as each defendant's

primary action of as respondeat superior, vicarious liability, and/or by acquiescing, ratifying, participating, accepting, and failing to rectify the primary actions of any one defendant.

289.  That this public policy is of general import throughout Ohio.

290. That as a result of such acts Plaintiff has been caused to suffer injury including but not necessarily limited to: (a) negative impact to business or employment relationship; (b) lost wages and/or lost advancement opportunities; (c) lost earnings due to discriminatory salary adjustments; (d) damages arising from physical harm or injuries; (e) damages arising from infliction of serious emotional distress; (f) damage to his self-esteem; (g) negative reports and/or evaluations resulting in adverse in his employment; and (h) termination from his employment; and (i) underutilization of Plaintiff's strengths.

## COUNT ELEVEN - CIVIL CONSPIRACY BY RICHARD BELL, MICHAEL O'MALLEY, BEVERLY DEAN, MARC BULLARD, GAYLE WILLIAMS-BYERS, KESTRA SMITH, WILLIAM MASON, JANNICE WALKER, TIMOTHY MCGINTY, THE CUYAHOGA COUNTY PROSECUTOR'S OFFICE, THE COUNTY OF CUYAHOGA, THE CUYAHOGA COUNTY HUMAN RESOURCE OFFICE, UN-NAMED BRANCH OF CUYAHOGA COUNTY

291.  Plaintiff realleges the allegations contained in paragraphs one through two hundred ninety as if fully re-written.

292.  That Plaintiff's claims of wrongful termination, intentional infliction of serious emotional distress, the intentional interference with business and/or employment relationship, the discrimination based on disability, harassment and retaliation  are the result of the actions and/or reports by individual defendants in concert with one or more of such defendants and/or either as each defendant's

primary action or failure to act and/or as respondeat superior, vicarious liability, and or by acquiesce in, ratifying participating, accepting, failing to rectify the primary actions of any one defendant.

293.  That such concerted acts and /or failure to act were undertaken in furtherance of the unlawful acts that form the basis for each cause of action all to Plaintiff's detriment.

294.  That such conduct was undertaken by at least one of Defendants, and any single act by agreement of at least two but possibly more Defendants to Plaintiff's detriment.

295.  That among others said agreement(s) are identified by, but not limited to the overt acts listed in Count Six above by the Defendants identified.

296.  That said concerted acts by Defendants resulted in Plaintiff's Injuries including but not necessarily limited to: (a) negative impact to business or employment relationship; (b) lost wages and/or lost advancement opportunities; (c) lost earnings due to discriminatory salary adjustments; (d) damages arising from physical harm or injuries; (e) damages arising from infliction of serious emotional distress; (f) damage to his self-esteem; (g) negative reports and/or evaluations resulting in adverse in his employment; and (h) termination from his employment; and (i) underutilization of Plaintiff's strengths.

WHEREFORE, Plaintiff prays for monetary damages that compensate him for lost wages, lost wage increases, lost benefits including lost pension benefits.  Additionally, Plaintiff prays for monetary damages to compensate for injury to his person and for injuries arising from the infliction of serious

emotional distress.  Said damages are in excess of $25,000.00.  Further, that as these

damages arise from conduct that is contrary to public policy and so far removed to

valid concerns of the Office or County so as to be intentional or purposeful without

regard to the impact upon Plaintiff or otherwise malicious or wanton in nature as

to require the imposition of an award of punitive damages that are sufficient to

deter future acts of similar nature.  Further, Plaintiff seeks any other damages

deemed appropriate by this Court including, if appropriate, legal fees.

Further, Plaintiff enters his demand for trial by jury comprised of the

maximum number of jurors allowed by law or the Rules of Civil Procedure.

Respectfully submitted,

**RICHARD A.F. MENDELSOHN**
**(pro se – 0020234)**
**32790 Ledge Hill Dr.**
**Solon, Ohio 44139**
**440-349-4904**

## CERTIFICATE OF SERVICE

A true copy of this Second Amended Complait was filed with the Clerk of
Courts and sent by e-m,ail to respective counsel this 18th day of February 18, 2014.

**Richard A.F. Mendelsohn**